## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SEBASTIAN MCMILLIAN,                *

    Plaintiff                          *

        v                              *              Civil Action No. DKC-11-2705

CORECTIONAL MEDICAL SERVICES,       *
INC.,  et al.

    Defendants                         *
                         ***

### MEMORANDUM OPINION

Plaintiff Sebastian McMillian ("McMillian") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983.  Defendants Correctional Medical Services, Inc., "Corizion", Lisa Schindler, P.A., Greg Flury, and Wexford Health Sources, Inc., by their attorneys filed  Motions to Dismiss, or in the Alternative for Summary Judgment.  ECF Nos. 15, 22, 34, & 41.  Plaintiff has responded.[1]  ECF Nos. 24, 25, &  48.  After review of the papers, and applicable law, the court determines that a hearing is unwarranted.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the dispositive motions will be GRANTED.

### Background

McMillian, an inmate currently confined at the North Branch Correctional Institution ("NBCI"),  filed the instant Complaint, alleging that on May 24, 2008, he injured his left foot while playing sports at the Jessup Correctional Institution.  He was evaluated by a podiatrist on

---

[1].  Plaintiff seeks to amend his complaint to include additional medical providers.  ECF No. 48.  Plaintiff's previous effort to amend his complaint regarding these additional Defendants was rejected.  ECF No. 45 & 47.  This additional effort to amend likewise is denied.

    To the extent the Motion to Amend and related documents include information in opposition to the pending dispositive motions, the information has been considered by the court.

September 18, 2008,who recommended surgery.   Plaintiff states he was informed on November 12, 2008, that the Warden of JCI approved the surgery.  Surgery, however, was not performed prior to his transfer to NBCI on January 14, 2009.  Plaintiff states he submitted numerous sick calls slips, beginning on February 3, 2009, complaining of pain in his left foot and inquiring about the surgery.  He specifically claims that he asked Lisa Schindler, P.A., as to the status of the approved surgery, but Schindler took no action to verify that Plaintiff had been recommended for surgery.  ECF Nos. 1, 4 & 10.

Plaintiff states on August 9, 2009, he was evaluated by Greg Flury, PA.  He states he advised Flury that his left foot required surgery but Flury failed to verify or take any action regarding Plaintiff's claim.  ECF No. 19.  Plaintiff was again evaluated by Flury a year later, on August 11, 2010.  At this time, Flury requested a podiatry consultation which Wexford denied.[2] *Id.*

Meanwhile, on December 12, 2009, Plaintiff filed a Request for Administrative Remedy ("ARP") complaining of the injury to his toe and delay in the surgery.  The Warden found a delay in referral to a podiatrist but no indication in the medical record that Plaintiff was to receive surgery prior to his transfer to NBCI.  ECF No. 1, 4, 10 & 19.

In February of 2010, Plaintiff contacted the Prisoner Rights and Information Service of Maryland ("PRISM") regarding his medical claim.   David C. Donovan, M.D. reviewed Plaintiff's medical file and reported, on August 31, 2010, that Dr. Jacob had noted a fracture of Plaintiff's left great toe and recommended surgery in November of 2008.   Donovan

---

[2] Wexford is the utilization review contractor for the State of Maryland.  Wexford reviews and approves all requests for on and off-site consultants.  When consultants request or recommend certain medical treatment, Wexford's utilization review pane must give the final approval.  Corizon and Correctional Medical Services are unaffiliated with Wexford and have no control over Wexford approval process.  ECF No. 15 & ECF No. 41, Ebbitt Affidavit.

recommended Plaintiff be referred for a podiatric consultation to assess the healing of the fracture and whether surgery was still a treatment option.   On an unspecified date, Wexford denied a request for podiatry consultation.   *Id.*

Plaintiff's uncontradicted medical records reveal that on May 24, 2007, Plaintiff came to the Dispensary complaining of pain in his left foot from an injury sustained while playing basketball.   ECF No. 15, Ex. A & B, p. 1-5.   John Moss, P.A. evaluated Plaintiff's left foot and found tenderness at the first metatarsal (toe) and decreased range of motion.   No swelling or neurovascular deficits were noted.   An x-ray was ordered and Plaintiff was assigned to feed-in/no work status for three weeks.   It was requested that Plaintiff be permitted to use crutches for three weeks and Motrin was prescribed for pain relief.   The x-ray, taken on May 31, 2007, and interpreted by the radiologist, showed no evidence of a fracture or dislocation of the bones in Plaintiff's left foot.   *Id.*

Plaintiff continued to complain of pain and swelling in the left foot and requested to be seen by a "foot doctor."   Moss examined Plaintiff on August 1, 2007, and noted a bunion on the left foot which was tender.   No swelling was noted.   Plaintiff was advised to apply warm compresses to his foot. *Id.*, p. 6-8.

Plaintiff did not again complain about pain in his left foot until July 19, 2008, when he submitted a sick call slip complaining of pain in his left big toe and requesting another x-ray of his foot.   He was evaluated on July 28, 2008, by Moss, who noted Plaintiff's prior left foot injury.   Moss also noted that Plaintiff had been participating in sports and was unsure if he had re-injured his foot during such activities.   Examination revealed a prominent bunion on Plaintiff's left great toe which was tender to palpation.   Moss submitted a Consultation Request

to Wexford Health Sources, ("Wexford") for Plaintiff to be evaluated by a podiatrist.  He also prescribed Indocin, a non-steroidal anti-inflammatory ("NSAID") medication for pain relief.  *Id.* p. 9-12, 67-68.

On August 1, 2008, Wexford received a request for podiatry evaluation which was approved.  ECF No. 41, Ex. 2.

Plaintiff was evaluated by Richard M. Jacobs, DPM on September 18, 2008.  Dr. Jacobs reviewed the x-ray of Plaintiff's left foot that was taken on May 31, 2007.  Dr. Jacobs' interpretation of the x-ray, contrary to that of the radiologist, was that Plaintiff had a fracture of his left great toe.  Dr. Jacobs' note appears to indicate he would talk to the JCI Medical Director regarding possible surgical repair of the fracture.  ECF No. 15, Ex. A & B, p. 4, 13-14. Dr. Tesfaye, the JCI Medical Director in September 2008, avers that he does not recall a conversation with Dr. Jacobs regarding possible surgery on Plaintiff's left foot.  Additionally, Plaintiff's medical records do not indicate such a conversation took place.  *Id.*, Ex. A.

On October 7, 2008, Plaintiff came to the Dispensary complaining of pain in his right great toe after sustaining an injury while playing basketball four days earlier.  Moss examined Plaintiff, noting the right foot was not swollen but was tender over the second and third toes. Plaintiff complained of pain while walking.  Moss ordered an x-ray of Plaintiff's right foot, cushions for his toes, and warm moist compresses for his foot.  The x-ray, taken on October 8, 2008, showed no acute bony trauma, but did reveal a bunion as well as mild degenerative joint disease ("DJD") of Plaintiff's right great toe.  *Id.*, Ex. A & B, p. 15-17.

On October 30, 2008, Wexford received a request for outpatient surgery for exploration and possible removal of loose bodies within the great toe.  ECF No. 41, Ex. 2.  Wexford's

4

records reflect that the surgery was approved and precertifications were sent to the site, Dr. Jacobs, and Laurel Regional Hospital. *Id*.

On November 12, 2008, Moss prescribed Indocin for pain relief.  On November 13, 2008, Dr. Jacobs evaluated Plaintiff again, noting that Plaintiff was approved for left foot surgery that had not been scheduled.[3]  Plaintiff's medical records maintained by Corizon/Correctional Medical Services, Inc., however, do not contain any record or notation that they received Wexford's approval of the surgery.  ECF No. 15,  Ex. A & B., p. 18-20, 71-72.

On January 13, 2009, Plaintiff was transferred to NBCI and on intake no medical issues were reported by Plaintiff.  He submitted a Sick Call slip on January 31, 2009, complaining of pain in his right foot.  Upon examination, it was noted that his right foot had good circulation and range of motion and was not swollen.  He was provided Motrin for pain relief.  Thereafter, Plaintiff submitted several sick call slips complaining of pain in his right foot and asking about surgery on his left foot. *Id*., p. 21-25.

Plaintiff was evaluated by Lisa Schindler, P.A. on February 19, 2009.  Plaintiff told Schindler of his right foot  injury and also that he was supposed to have an x-ray of his right foot but was transferred to NBCI before it was scheduled.  He complained of pain in the ball of his right foot and tenderness at the second and third metatarsal heads (the portion of the bone in the foot that connects with the toe).  Plaintiff requested Indocin for pain relief.  Examination revealed no swelling in Plaintiff's right foot.  Schindler ordered an x-ray of Plaintiff's right foot and an ACE wrap to provide extra cushioning, and prescribed Indocin for pain relief.  Schindler made no notation that Plaintiff inquired or mentioned surgery for his left foot.  The x-ray of

---

[3] Dr. Jacobs' notes are difficult to read. *Id*., p. 18.

Plaintiff's right foot showed DJD of the first and second toes on his right foot. *Id*., p. 26-36, 74-77.

On June 17, 2009, Plaintiff filed a sick call slip complaining of pain in his left big toe. He was evaluated on August 9, 2009, by Greg Flury, P.A. for his complaints of pain in both feet. Plaintiff advised Flury that he was supposed to have surgery on his left foot and complained of constant dull pain in both of his great toes as well as the dorsal aspect of both feet. Examination showed Plaintiff had bunions and hallux rigidus (limited range of motion of the great toe which is often, but not always, associated with arthritis of the big toe) in both feet. Flury prescribed Piroximan, another NSAID, for pain relief and advised Plaintiff to avoid standing or walking for longer than thirty minutes without fifteen minutes of rest. Flury requested a podiatrist consult. *Id*., p. 37-45, 78-79.

On August 19, 2009, Hubert Mickel, M.D. evaluated Plaintiff for his continued complaints of foot pain. Mickel noted the injury to Plaintiff's left foot and Dr Jacobs' recommendation for surgery. Mickel also noted that Plaintiff had subsequently developed pain in his right great toe in much the same location as his left. Mickel ordered repeat x-rays of both great toes, which were taken on August 24, 2009, and showed DJD. The radiologist did not note any recent or old fractures. Mickel discontinued Plaintiff's prescription for Piroximan and restarted Indocin for treatment of foot pain. *Id*. He also submitted a podiatry consult request to Wexford. Dr. Smith recommended conservative therapy to manage Plaintiff's bunion pain and hallux rigidus and to re-submit the request for re-evaluation by a podiatrist if no improvement was observed over the next three months. ECF No. 41, Ex. 1 & 2.

On September 16, 2009, Mickel noted the result of the x-rays, and ordered blood tests to see if Plaintiff had an elevated uric acid level, an indicator of gout, which can cause pain in a patient's toes.   The blood tests performed on April 15, 2010 and April 30, 2010 indicated Plaintiff's uric acid level was within normal limits. ECF No. 15, Ex. A & B,  p. 47-50.

Plaintiff's complaints of foot pain continued, as did his prescription for Indocin.   On August 11, 2010, Plaintiff advised Flury that Indocin was beneficial to relieve symptoms and his foot pain did not interfere with his job as a barber.   Flury requested a podiatry consultation for Plaintiff but Wexford denied the request, instead recommending conservative management of Plaintiff's foot pain.   Wexford approved a request for gel toe spreader which Plaintiff received on November 16, 2010.  *Id.*, p. 51-60, 64 and ECF No. 41, Ex. 2 & 3.

Plaintiff continued to receive Indocin for foot pain until October 21, 2010.   After that time Plaintiff did not seek treatment for foot pain.   Plaintiff received pain medication in December, 2011 through March, 2012, for other medical problems which would have helped alleviate any pain he experienced in his left foot.  *Id*, p. 61-63, 65-66, 80-106.

On August 25, 2012, x-rays of Plaintiff's feet were again completed.   The x-rays demonstrated degenerative changes in the first metatarsal phalangeal and interphalangeal joint of the first digit of the right foot with no evidence of acute fracture, subluxation or dislocation. Degenerative change along the first metatarsal phalangeal of the left foot was also noted, with no evidence of acute fracture, dislocation or subluxation identified.   ECF No. 41, Ex. 3.   Plaintiff was issued gel insoles on September 28, 2012.  *Id*.

**Standard of Review**

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,  561-62 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513

(2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id.* 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.    Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis[4]

A.     Respondeat Superior

Plaintiff has failed to allege any action on the part of Corizon, Correctional Medical Services, or Wexford, and as such his claims against them are subject to dismissal.  *See e.g. Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing cause of action against official where Plaintiff failed to allege any personal connection between the official and the denial of Plaintiff's constitutional rights.).

To the extent Plaintiff alleges that Corizon, Correctional Medical Services, Inc., and Wexford were responsible for overseeing medical staff, such a claim is based solely upon the

---

[4]Defendants correctly maintain that Plaintiff's claims of inadequate medical care arising before June, 2009, are barred by the statute of limitations.  "Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387 (2007), *citing Owens v. Okure,* 488 U.S. 235, 249-250, (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280, (1985).  In Maryland the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Cts & Jud. Proc. Code Ann.§ 5-101.

doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Defendants Corizon, Correctional Medical Services, Inc., and Wexford that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.

B.   .Denial of Medical Care

In order to state a claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner Plaintiff was suffering from a

serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).    The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839‒ 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).    Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged."  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff's allegation that he was not provided necessary medical treatment for his left foot injury is belied by the record which demonstrates that Plaintiff has received constitutionally adequate medical care.  Plaintiff has been evaluated regularly regarding his complaints of foot pain and several x-rays have been take of Plaintiff's left foot.  Two radiologists who reviewed

the x-rays noted no fracture.  Plaintiff has been diagnosed with bunions and DJD.  He has been provided analgesic medication and prescribed a conservative manner of treatment, including spreaders to help relieve pressure on the bunion as well as other cushioning for his feet. Assuming, Dr. Jacobs recommended surgery, there is no indication that on-site medical staff received approval of same, or that the surgery was even necessary, given that Dr. Jacobs' opinion that the x-ray demonstrated a fracture of the great toe conflicted with two radiologists' reading of two separate x-rays finding no fracture.  Plaintiff's disagreement with a course of treatment does not provide the framework for a federal civil rights complaint.  *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).  In granting summary judgment to Defendants the court does not imply that Plaintiff is not entitled to medical treatment for his serious conditions.  The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970).  There are no exceptional circumstances in this case.  Plaintiff has been evaluated repeatedly and provided appropriate tests as well as analgesic medication.   As of his last evaluation, there was no indication that any additional treatment or testing was required.  Even if true - which it is not -- the allegation that Defendants provided inappropriate treatment state nothing more than a claim of medical malpractice and negligence.[5]  "[A]n inadvertent failure to provide adequate medical

---

[5]Under Maryland law, a claim of medical malpractice could proceed only after complete review before the Maryland Health Claims Arbitration Board.  *See* Md. Code Ann., Cts & Jud. Proc., §3-2A-01 *et seq.*; *see also*

care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

For the reasons stated, summary judgment is granted in favor of Defendants.   A separate Order shall be entered in accordance with this Memorandum Opinion.


Date:   March 11, 2013                                      /s/
                                          DEBORAH K. CHASANOW
                                          United States District Judge

---

*Davison v. Sinai Hospital of Balt. Inc*, 462 F.Supp. 778, 779-81 (D. Md. 1978); *Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 114 (1983).  There is no demonstration that plaintiff has sought or completed such review.  This court declines jurisdiction over these state court claims, and dismisses them without prejudice.  *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

G:\Pro Se Orders 2013\11-2705 McMillan AMENDED SJ Memo DKC EDIT.docx